UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WENDELL SMITH**                                          :
Reg. No. 16474-083                                         :
United States Penitentiary Allenwood          :
P.O. Box 3500                                              :
White Deer, Pennsylvania 17887                  :
                                                           :
      Plaintiff                 :
                                                           :
v.                                                         :
                                                           :
**THE DISTRICT OF COLUMBIA**                    :
441 4TH Street, N.W.                 :
Washington, D.C.  20001                            :
                                                           : Case No.
      SERVE: Office of the Mayor of the    :
      the District of Columbia                     :
      441 4th Street, N.W.              :
      Washington, D.C.  20001                      :
                                                           :
      Agent for the City                                   :
      Office of the Corporation Counsel,      :
      District of Columbia                            :
      441 4th Street, N.W.             :
      Room 600                                            :
      Washington, D.C.  20001                     :
                                                           :
**ODIE WASHINGTON**, in his individual    :
and official capacity                                  :
Director, Department of Corrections         :
1923 Vermont Avenue, N.W.                      :
Washington, D.C.  20001                            :
                                                           :
**MARGARET MOORE,**  in her individual   :
and official capacity                                   :
Director, Department of Corrections          :
1923 Vermont Avenue, N.W.                       :
Washington, D.C.  **20001**                        **:**
                                                           **:**
**ADRIENNE R. POTEAT**, in her                :
individual and official capacity                  :
1923 Vermont Avenue, N.W.                      :
Washington, D.C.  20001

| | |
|---|---|
| **JAMES MURPHY**, in his individual | : |
| and official | : |
| 1923 Vermont Avenue, N.W. | : |
| Washington, D.C.  20001 | : |
| | **:** |
| **MICHELLE ELZIE**, in her individual | : |
| and official capacity | : |
| 1923 Vermont Avenue, N.W. | : |
| Washington, D.C.  20001 | : |
| | |
| **JOHHNY SHOWELL,** in his | : |
| individual and official capacity; | : |
| 1923 Vermont Avenue, N.W. | : |
| Washington, D.C.  20001 | : |
| | : |
| **DAVID ROACH,** in his | : |
| individual and official capacity | : |
| 1923 Vermont Avenue, N.W. | : |
| Washington, D.C.  20001 | : |
| | : |
| **LEONA Z. BENNETT**, in her | : |
| individual and official capacity; | : |
| 1923 Vermont Avenue, N.W. | : |
| Washington, D.C.  20001 | : |
| | : |
| **BELINDA WATSON BARNEY**, in her | : |
| individual and official capacity; | : |
| 1923 Vermont Avenue, N.W. | : |
| Washington, D.C.  20001 | : |
| | : |
| Defendants | : |

## COMPLAINT FOR DAMAGES

### INTRODUCTORY STATEMENT

This is a civil action brought on behalf of Wendell Smith, a prisoner currently confined at

the United States Penitentiary at White Deer, Pennsylvania. The plaintiff is an inmate serving a

2

sentence for a violation of District of Columbia Law but is serving that sentence at a federal institution.

Plaintiff alleges that he has been subjected to violations of law which have caused him severe and substantial damages. Plaintiff seeks monetary damages.

## JURISDICTION

1. Plaintiff seeks to vindicate rights protected by the Fifth and Eighth Amendments to the United States Constitution and District of Columbia law. This Court has jurisdiction of the constitutional claims pursuant to 28 U.S.C. § 1331 and § 1343 (a)(3), (a)(4) and (b)(1). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims arising under District of Columbia law. Pursuant to 28 U.S.C. §2201 and § 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

## VENUE

2. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 (b).

## PARTIES

3. **Defendant District of Columbia** is a municipal corporation and is responsible for the supervision and operation of its subordinate agencies including the District of Columbia Department of Corrections. (hereinafter "DCDC") As such the defendant District of Columbia is responsible for administering its operations in a manner consistent with clearly established constitutional guarantees, statutory and local law, including the Lorton Regulations Approval Act of 1982. (hereinafter "LRAA") Defendant District of Columbia, through its decision makers, policy advisors and employees of the DCDC, is responsible for the execution and proper

implementation of all of its laws including those that affect the Maximum Security Facility (hereinafter "MSF") and the DCDC.  The District of Columbia supported and condoned violations of plaintiff's constitutional rights and its own laws. Defendant District of Columbia is sued in its own capacity and as a municipality.

4.  **Plaintiff Wendell Smith** is currently serving a sentence imposed for a violation of the law of the District of Columbia.  Mr. Smith was assigned a DCDC identification number of 219-106 and placed under the care and custody of the District of Columbia Departments of Corrections.  The plaintiff was housed at the Maximum Security Facility at Lorton Correctional Institution (hereinafter "Lorton") from on or about April of 1997 until June of 2000.

5.  **Defendant Odie Washington** is the Director of the Department of Corrections of the District of Columbia.  Defendant Washington is responsible for ensuring that he follows clearly established constitutional, statutory and local law, including the Lorton Act.  Defendant Washington is also responsible for directing his subordinates employed within the Department of Corrections and at MSF in such a manner as to correct obvious violations of law brought to his attention through personal observation, oral notice, or written notice.  Defendant Washington is sued in his individual and official capacity

6.  **Defendant Margaret Moore** was the Director of the Department of Corrections of the District of Columbia during the time that the plaintiff was transferred from the Occoquan Facility at the Lorton Correctional Institution to the Maximum Security Facility at the Lorton.  During the time that she was the Director of the Department of Corrections of the District of Columbia, Defendant Moore was responsible for directing her subordinates employed within the Department of Corrections and at MSF in such a manner as to correct obvious violations of law

4

brought to her attention through personal observation, oral notice, or written notice.  Defendant

Moore is sued in her individual and official capacity

6.  **Defendant Adrienne Poteat** became the Warden at MSF in 1999. Prior to her

becoming the Warden at MSF, Defendant Poteat was the Deputy Director for all of Lorton.

Defendant Poteat is responsible for ensuring that she follows clearly established constitutional,

statutory and local law, including the LRAA. Defendant Poteat is also responsible for directing

her subordinates employed at MSF in such a manner as to correct obvious violations of law

brought to her attention through personal observation, oral notice, or written notice.  Defendant

Poteat exercised her authority by overseeing and directing the plaintiff's status as a "Special

Handling" prisoner and by directing the plaintiff's housing assignment at all times after she

became Warden at MSF.  Defendant Poteat is sued in her individual and official capacity

7.  **Defendant James Murphy** was the warden at MSF in 1998 and 1999.  Defendant

Murphy  is responsible for ensuring that he follows clearly established constitutional, statutory

and local law, including the LRAA.  Defendant Murphy is also responsible for directing his

subordinates employed at MSF in such a manner as to correct obvious violations of law brought

to his attention through personal observation, oral notice, or written notice.  Defendant Murphy

exercised his authority by overseeing and directing the plaintiff's status as an inmate in

Administrative Segregation and by directing the plaintiff's housing assignment at all times during

his tenure as Warden at MSF.  Defendant Murphy is sued in his individual and official capacity.

8.  **Defendant Michelle Elzie** was the warden at MSF in late 1997 and early 1998.

Defendant Elzie is responsible for ensuring that she follows clearly established constitutional,

statutory and local law, including the LRAA. Defendant Elzie is also responsible for directing her

5

subordinates employed at MSF in such a manner as to correct obvious violations of law brought to her attention through personal observation, oral notice, or written notice.  Defendant Elzie exercised her authority by overseeing and directing the plaintiff's status as a  "administrative segregation prisoner and by directing the plaintiff's housing assignment at all times during her tenure as Warden at MSF.  Defendant Elzie is sued in her individual and official capacity.

9.  **Defendant Johnny Showell** was the Deputy Warden for Operations at the Medium Security Facility, Lorton Correctional Institution and the Acting Warden, Occoquan Facility, at Lorton at the time that the plaintiff was transferred to the Maximum Security Facility at Lorton in April of 1997. As Warden, defendant Showell is responsible for directing his employees at the Occoquan Facility in such a manner as to correct obvious violations of law brought to his attention through personal observation, oral notice or written notice.   As Warden, defendant Showell is responsible for ensuring that Occoquan Facility employees know and follow clearly established law while acting in their official capacity.  Defendant Showell, while serving as Warden denied the plaintiff's administrative appeal leading to the plaintiff's placement at MSF on administrative segregation.

10.  **Defendant David Roach** was the Warden at MSF prior to the tenure of James Murphy.  Defendant Roach is responsible for ensuring that he and his subordinates follow clearly established constitutional, statutory and local law including the LRAA. While serving as Warden defendant Roach directed the plaintiff's housing assignment at MSF. Defendant Roach is sued in his individual and individual capacity.

11.  **Defendant Leona A. Bennett** was in 1999 and 2000 the Deputy Warden at MSF. Defendant Bennett is responsible for ensuring that she and her subordinates follow clearly

established constitutional, statutory and local law including the LRAA. On September 11, 1999, Defendant Bennett ordered that the plaintiff be transferred from CB-4 to CB-3 without any basis for doing so. Defendant Bennett is sued in her individual and official capacity.

12. **Defendant Belinda Watson Barney** was the acting Warden at MSF in June of 1997 at the time that the plaintiff was transferred to MSF.  As Warden, she is responsible for ensuring that maximum facility employees as her subordinates knew and followed clearly established law while acting in their official capacity.  Defendant Barney is sued in her individual and official capacity.

13.  All individual defendants were acting under color of law of the District of Columbia and all individual defendants were acting within the scope of their employment.


## FACTS

14.  In March of 1997, the plaintiff was an inmate in the general population at the Occoquan Facility at Lorton.

15.  On March 29, 1997, Captain Rodriquez at the Occoquan facility received an anonymous written note from an inmate addressed to "Sgt. King" who identified himself only as "Informer."

16.  The note purported to inform the officials at the Occoquan facility that the informer had "overheard Wendal Smith and Ian Thorn talking about exscapeing." [sic]

17.  The letter also stated that the plaintiff said that he was hoping that another inmate Rodney Shorter would assist them and that Mr. Smith threatened to do harm to a correctional officer named Donna Reinhart.

18. The plaintiff was strip searched, and his personal property was also searched. No contraband of any kind was recovered in the search of the plaintiff's person and property.

19. Solely on the basis of the anonymous note, Sergeant Terry Battle concluded that the plaintiff was an escape risk. Accordingly, pending a housing hearing, Sergeant Battle ordered that the plaintiff be removed from general population and placed in administrative segregation. A second inmate, also named Wendell Smith, as well as Ian Thorne were also placed in administrative segregation.

20. Prisoners kept in administrative segregation are afforded at most two hours of out of cell recreation per week. Moreover, even that amount of out of cell recreation may be limited by prison officials because of extraordinary safety and security risks. LRAA, 28 DCMR § 521.8.

21. A hearing was held before the Housing Board on April 2, 1997. The sole evidence presented at the hearing was the note from "Informer" and the memorandum from Sergeant Battle ordering administrative segregation on the basis that the plaintiff was an escape risk. As such, there was no evidence corroborating the single note that had been submitted by the unidentified "informer."

22. Based solely on the anonymous note from "Informer" containing uncorroborated statements, the Housing Board recommended that the plaintiff should be maintained on administrative segregation as an "escape risk" and a "threat to self and others."

23. On or about April 1, 1997, The plaintiff filed an administrative appeal to defendant deputy warden Johnny Showell. On April 8, 1997 defendant Showell denied the plaintiff's appeal without citing any corroboration of the note from the "informer." Instead, defendant Johnny Showell cited the plaintiff's "previous behavior in the Occoquan facility.

8

24. On July 3, 1997, the plaintiff filed a Writ of Habeus Corpus.  On October 17, 1997, the plaintiff's Writ of Habeus Corpus was denied by Judge Ronald Wertheim of the Superior Court for the District of Columbia.  The plaintiff's Writ of Habeus Corpus was denied without a hearing and without the court issuing findings of facts.

25. The plaintiff remained on Administrative Segregation at MSF and remained on Administrative Segregation until November 15, 1998.  At that time, the plaintiff was transferred to Red Onion State Prison in Pounds, Virginia.

26. Red Onion State Prison is a Virginia State Prison that contracted with the District of Columbia Department of Corrections for the purpose of housing prisoners who had been convicted of violations of the laws of the District of Columbia.

27. Upon being transferred to Red Onion State Prison, the plaintiff was immediately placed on a high security administrative segregation status per the express instructions of the District of Columbia Department of Corrections.

28. The plaintiff remained at Red Onion State Prison until May 27, 1999 at which time he was transported back to MSF.

29. On September 11, 1999, deputy warden defendant Leona Bennett, without any basis for doing so and without providing any explanation for doing so, ordered that the plaintiff be transferred to CB-3 from CB-4.

30. CB3 is a highly restrictive unit which is comprised in part of prisoners with severe psychiatric problems, many of whom have a history of attempts at suicide.  The area of CB3 which houses psychiatric inmates has been historically been known as the Suicide/Psychiatric unit.  All prisoners housed in CB3 are permitted to come out of their cells for only one hour per

day.

31.   The suicide/psychiatric unit on CB3 is in the lower left tier of the cell block.
Because there were more prisoners with severe psychiatric problems than space available in the
lower left tier, psychiatric prisoners were transferred to the lower right tier and the upper right
tier where the plaintiff was housed.  Psychiatric inmates frequently engage in aggressive behavior
with other inmates which often results in fights, shouting matches, the throwing of feces and
burning of various materials.  The cellblock had extremely poor ventilation, a condition which
was exacerbated by broken windows which cannot be opened.  The cellblock was also infested
with flies, cockroaches and ants.

32.   Inmates on CB-3 are not given outside recreation.  In addition, there are no adequate
indoor recreation facilities.

33.   There are no water temperature controls on the faucets in CB-3.  Therefore, shower
water is extremely cold or extremely hot.   The mop heads are never changed and are continually
used to mop up human urine and feces.  The shower stalls are often used by the mental patients
who are inmates on CB-3 as urinals.  Plaintiff was never given cleaning supplies by which he
could clean his cell.  He was never issued razors for shaving or laundry detergent for washing
clothes.

34.   The plaintiff was housed in CB-3 despite a lack of psychiatric evaluation. When
placed in that cellblock, the plaintiff was placed in "high-security" status.  Accordingly, the
plaintiff was allowed out of his cell for only ten hours each month, two one hour recreation
periods each week, one ten minute shower period each week and one twenty minute telephone
period each week.  The confinement of the plaintiff in such a small antiquated cell for long time

10

periods constitutes cruel and unusual punishment.

35.  The plaintiff remained on administrative segregation until April 20, 2000.

36.  On April 20, 2000, the District of Columbia Court of Appeals issued a ruling in which the court held that the plaintiff was entitled to a hearing on his Petition for A Writ of Habeus Corpus.   Accordingly, the case was remanded back to the District of Columbia for further proceedings consistent with the court's opinion. *Wendell Smith v. Margaret Moore, et al 749 A. 2d 132 (D.C. 2000)*

37.  In so holding, the District of Columbia Court of Appeals held that the due process requirements of the LRAA, 29 D.C. Reg. 3484 (1982), require that "Where, as in this case, a prisoner was subjected to severe discipline on the basis of allegations made by an anonymous informant, the informant's reliability had to be contemporaneously and independently assessed." *Wendell Smith v. Margaret Moore, et al, 749 A. 2d 132,137 (D.C. 2000)*

38.  On June 30, Judge Ronald P Wertheim of the Superior Court of the District of Columbia granted the plaintiff's Petition for a Writ of Habeus Corpus.

39.  The LRAA requires that for an inmate to be placed in administrative segregation, there must be a finding that he is either (a) There is a clear and present threat to the safety of the resident, (b) The resident poses a clear and present threat to the safety of others; or (3) The resident poses a definite escape risk. LRAA, D.C. Reg 3484 (1982)

40.  During the three years and three months that the plaintiff was in administrative segregation, the Department of Corrections repeatedly denied the plaintiff the thirty day review hearings that the LRAA legally requires.  As a result the plaintiff was kept in administrative segregation without there being the finding required by the LRAA.

11

41.  28 DCMR § 527.2 provides in pertinent part that

> at each thirty-day review, it shall be the responsibility of the Housing
> Board to determine whether the resident's return to the general
> population at the time of that particular review still poses an escape risk
> or security risk to the resident or others.

28 DCMR, § 527.8 provides in pertinent part that

> If the Board determines that there is no longer an escape risk, or a
> security risk to the resident or others, the resident shall be released
> from segregation.

42.  The actions of the Warden, Deputy Warden in disapproving the plaintiff's release from administrative segregation and failing to provide hearings to the plaintiff were in violation of 28 DCMR § 527.8.  The failure to hold housing hearings violated the requirement pursuant to 28 DCMR § 527.1 that hearings regarding administrative segregation status be held every thirty days.

43.  During the three years and three months that the plaintiff was in administrative segregation, primarily at MSF, the conditions at MSF constituted cruel and unusual punishment.

44.  During the three years and three months that the plaintiff was in administrative segregation, there were repeated incidents involving other inmates where demonstrations and disturbances broke out.  During these demonstrations and disturbances, inmates often flooded the tier causing the floor to be covered with trash and contaminated water, threw feces and urine on other inmates and physically attacked other inmates.

45.  In addition, during these demonstrations and disturbances, inmates lit fires which due to poor ventilation led to the cell block being filled with smoke.

46.   During the time that the plaintiff was in administrative segregation, as a result of the incidents described in paragraphs forty-four and forty-five above, the plaintiff suffered from respiratory distress, severe and continuous headaches, shortness of breath, dizziness, dehydration, severe skin rashes, disorientation, sleep deprivation and psychological difficulties.

47.   While in administrative segregation, the plaintiff was kicked down a flight of stairs by correctional officers Gavan and Lane.  As a result of this incident, the plaintiff suffered a severe laceration and permanent scarring to his left knee.

48.   The MSF is an antiquated, spartan prison which fails to meet even the most basic human needs of those prisoners who are housed there.   MSF is in a state of disrepair with heating and ventilation systems that are in extremely poor condition.  Many of the steam pipes leak, the control valves do not operate properly, and there is no ventilation system in any of the housing units.  There is an extraordinarily high noise level in the cellblocks.

49.   There is no system of mechanized ventilation in CB 3 or in any of the other segregation units.  Moreover, the windows in CB 3 are in a state of disrepair such that many of them will not open.  Inmates at CB 3 and particularly those on the Suicide/ Psychiatric unit regularly set fires and burn "wicks" from toilet paper.  The result of the setting of fires and the burning of wicks is that the air is polluted with smoke and other burnt matter.  These conditions caused the plaintiff, an individual with a susceptibility to respiratory problems to experience difficulty in breathing, choking and gagging and pain in his lungs.

50.   District of Columbia law prohibits the use of tobacco products in buildings owned, operated or controlled by the District government.  No smoking signs at CB 3 communicate to inmates that smoking is prohibited."  The failure of MSF staff and other agents of defendant

District of Columbia to implement the promulgated "No Smoking" ordinance at MSF is widespread, of such duration and routine pattern and practice so as to constitute a policy which put plaintiff's health, safety and well-being at risk.

51.   The actions of defendants Poteat, Bennett, Showell, Barney, Roach, Elzie and Murphy were in knowing violation of the Lorton Act. Said actions were purposefully calculated to deny plaintiff his rights under the Lorton Act and to place him in a facility, the Maximum Security Facility and a unit, CB3, where those defendants knew plaintiff would be exposed to the most physically dangerous and psychologically stressful environment available to inmates.

52.   The pattern and practice of DCDC staff in deliberately and knowingly failing to implement the requirements of the LRAA and to provide decent, healthy, safe and sanitary conditions of confinement establish a policy of defendant District of Columbia to violate the rights of prisoners in the MSF.  All defendant acted with actual malice toward the plaintiff or with callous and deliberate indifference to his constitutional rights.

## LEGAL CLAIMS

### COUNT I

The allegations of fact herein above set forth are adopted herein and made a part hereof, and further,

53. The defendants have acted with deliberate indifference in denying the plaintiff safe and sanitary shelter in violation of the Eight Amendment of the United States Constitution.

### COUNT II

The allegations of fact herein above set forth are adopted herein and made a part hereof, and further,

54. The defendants have acted with deliberate indifference to plaintiff's serious needs, in violation of the Eighth Amendment to the United States Constitution.

## COUNT III

The allegations of fact herein above set forth are adopted herein and made a part hereof, and further,

55. The defendants' placement on the Suicide/Psychiatric Watch Tier in CB 3 in the absence of a meaningful hearing violated the Fifth Amendment of the United States Constitution.

## COUNT IV

The allegations of fact herein above set forth are adopted herein and made a part hereof, and further,

56. The defendant's designation of plaintiff for Administrative Segregation status, defendants' placement of plaintiff on CB 3 and defendants' failure to review the Administrative Segregation status and placement violate the Lorton Regulations Approval Act of 1982.

## COUNT V

The allegations of fact herein above set forth are adopted herein and made a part hereof, and further,

57. The conditions at CB3 described above are so serious, of long duration and extensive that they demonstrate a pattern, practice and routine and constitute a policy by defendant District of Columbia to inflict cruel and unusual punishment on prisoners who are confined in that unit.

## COUNT VI

The allegations of fact herein above set forth are adopted herein and made a part hereof, and further,

15

58. The defendants owed a duty of care to the plaintiff to make reasonable efforts to secure the safety and health of the plaintiff while he was an inmate who was incarcerated for violations of District of Columbia law.

59. That the defendants failed to exercise reasonable care with regard to the plaintiff's safety and health during the time that he was at MSF as described above.

60. That as a proximate result of the aforesaid acts of negligence by correctional officials in failing to secure the safety of the plaintiff the plaintiff who was at all times exercising due care, sustained serious physical injuries and acute chronic and sustained pain and suffering.

61. That as a proximate result of the aforesaid acts of negligence in failing to exercise a reasonable standard of care in the maintenance of MSF, the plaintiff who was at all times exercising due care, sustained serious physical injuries and acute chronic and sustained pain and suffering.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury for all counts of this amended complaint.

## RELIEF REQUESTED

Based on the foregoing, plaintiff seeks the following relief from the Court:

A. Issue judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the policies, practices, acts and omissions complained of herein violated plaintiff's rights as set forth in ¶¶ 10-60.

B. Compensatory damages in the amount of $500,000.00 against the District of Columbia.

16

C.  Compensatory damages in the amount of $300,000.00 against District of Columbia

D.  Compensatory damages in the amount of $100,00.00 against Odie Washington.

E.  Punitive damages in the amount of $50,000.00 against defendant Odie Washington.

F.  Compensatory damages in the amount of $100,000.00 against defendant Margaret Moore.

G.  Punitive damages in the amount of $50,000.00 against defendant Margaret Moore.

H.  Compensatory damages in the amount of $100,000.00 against defendant Adrienne Poteat.

I.  Punitive damages in the amount of $50,000.00 against defendant Adrienne Poteat .

J.  Compensatory damages in the amount of $50,000.00 against defendant James Murphy.

L.  Punitive damages in the amount of $25,000.00 against defendant James Murphy.

M.  Compensatory damages in the amount of $50,000.00 against defendant Michelle Elzie.

N.  Punitive damages in the amount of $25,000.00 against defendant Michele Elzie.

O.  Compensatory damages in the amount of $100,000.00 against defendant Johnny Showell.

P..  Punitive damages in the amount of $50,000.00 against defendant Johnny Showell..

Q.  Compensatory damages in the amount of $50,000.00 against defendant David Roach.

R.  Punitive damages in the amount of $25,000.00 against defendant David Roach.

S.  Compensatory damages in the amount of $100,000.00 against defendant Leona Bennett.

T.  Punitive damages in the amount of $50,000.00 against defendant Leona Bennett.

U.  Compensatory damages in the amount of $50,000.00 against defendant Belinda Watson Barney.

V.  Punitive damages in the amount of $25,000.00 against defendant Belinda Watson Barney.

W.  A trial by jury of all issues triable by a jury.

X.  That the court retain jurisdiction over defendants until such time that the Court is satisfied that defendants' unlawful policies, practices, acts and omissions no loner exist and will not recur.

Y.  Plaintiff's reasonable attorney's fees pursuant to 42 U.S.C. §1988, including costs of this action; and

Z.  Such other and further relief as to this Court deems just and reasonable.


Respectfully submitted


_____
Peter N. Mann, Esquire
Bar #351650
514 Tenth Street, N.W.
Ninth Floor
Washington, D.C.  20004
(202) 387-3547
*Counsel to Wendell Smith*

18